First case call for oral argument is Wardwell v. Union Pacific. Counsel, at your convenience, when you're ready, you may proceed. Thank you, Your Honor. Excuse me. Good morning. May it please the Court. My name is Mark Buchanan, and I represent Christopher Wardwell, who was the plaintiff below and is the appellant here today. I'd like to use my time today to talk about three issues that are on the field, because each of these three issues requires this verdict be reversed and a new trial granted to Mr. Wardwell. The first one, which I anticipate is going to take the bulk of my time today, and I'd like to put off for the other two for a minute, deals with the trial court's improper granting the railroad a sole cause affirmative defense, which is impermissible in an FBLA case as a defense. The second issue, Your Honor, that I would like to cover, and what I'd like to begin with, is at the end of my brief, and by no means is it meant to be minor or just talked about. And that is, Mr. Jones, the railroad's attorney, improperly introduced opinion testimony of lay witnesses, and the Supreme Court has said that that is grounds by itself for a reversal. And the question that was asked by Mr. Jones was in a line of questioning, and it was all the passengers in the van, every single one of them, said that the sole cause of the collision, the cause was the drunk driver rear-ending the van, and then there was a series of other questions. In the case I cited to this court in Freeding, the court was very specific and said it's error, and it's presumed to be prejudicial when you introduce lay opinion testimony on an ultimate issue. And the reason, Your Honor, that I want to bring that up is because the railroad also says in their brief that I have to prove prejudice, and that's not a correct standard in Illinois when they introduce impermissible lay opinion testimony, is they have to affirmatively show in the record that there was no prejudice. And the Supreme Court in Freeding said that when you introduce the evidence and when you make reference to that in your closing argument, the record can never be said to be non-prejudicial, and it requires a reversal. That's what Freeding said. Was there a contemporaneous objection to that line of questioning? By me, yes. Okay. And those objections were overruled. My objection was overruled. It was a line of questioning that was begun by Mr. Jones on page 242, line 22, Your Honor, that said to my doctor, my expert, Dr. Schmidt, that said, isn't it true that each and every one of the lay witnesses or each and every one of the people in the band said that the sole cause and I object right then and there, and then judge overruled it, and then we went on to a series of other questions. So, yes, there was a contemporaneous objection to that. They argued that it was admissible into evidence because it was a fact question to Dr. Schmidt. And, Your Honor, there was not a single fact in that question. I mean, if you look at the question, it's all the passengers said that the sole cause of the collision was the cause, was the drunk driver with her ending the band. I mean, if you look at the Freeding case, and if you also look at STRASMA, S-T-R-A-S-M-A versus Rager, 145113rd, 826, which was the third district, those cases, the question was very simple. It wasn't egregious like it was in this case, and it was simply said that could you have done anything to avoid the accident? And the court in both of those cases said that's grounds for reversal. That's an improper question. Now, the other argument that we ever made on page 36 of the brief was, well, we were contesting Dr. Schmidt's opinion, and I want to make sure I read it correctly, that the van driver was at fault in the accident and were therefore entitled to wide latitude. Well, Dr. Schmidt never gave that opinion. That was not why I called Dr. Schmidt. I called Dr. Schmidt to provide testimony and calculations as to time and distance. Dr. Schmidt never gave the opinion that the van driver was at fault. I mean, I understand sometimes accident reconstruction people could do that, but that was never asked of Dr. Schmidt. So their entire argument or their defense as to why it was admissible, number one, that it was a fact question, because it wasn't a fact question. If they wanted to contest Dr. Schmidt's opinions as to time, they could have asked the van driver, the people in the van, how long was it in the lane? Did she turn on her directional? Did she look over her shoulder? Those are fact questions, but an opinion question on causation is an opinion question. It is not a permissible opinion. So that's the first point. Although it's at the back of my brief, it requires reversal by itself. The second issue, unless the Court has any questions on that issue, I'll move on to my second point. The second point deals with the introduction by some of the collateral source, the fact that Mr. Wartwell's medical bills were paid by UnitedHealthcare. There was a contemporary objection to that, Your Honor. What happened, in other words, if you look at the record, they asked him, you submitted all your medical bills associated with this incident to UnitedHealthcare. Yes. Now, they assert in their brief there was no objection by counsel. But if you look at the next question, and since I was there, it says, and UnitedHealthcare is providing your insurance. And if you look at my objection, I say, objection, Your Honor. And then I interrupted Mr. Jones, and I said, excuse me, objection. And my objection was, he's violating his own motion on medical bills. It wasn't an objection to the previous question about UnitedHealthcare. I was trying to interrupt, but the reporter can only take down one person at a time. So there was a contemporary objection. Number two, they said that we weighed our, or we opened the door, basically, to the introduction of that type of evidence. And they said that because I asked Dr. Schenninger if, in fact, it was an outstanding bill and how much was that bill. And that's all I asked the doctor. I did not ask him how much was your total bill, how much was paid, who paid it, who did you submit it to. There were no questions like that. It was simply, is there an outstanding bill, what is the amount? That was all that was asked. They also said we weighed it or opened the door when I asked Mr. Wardwell if, because he used to be a conductor that had certain health benefits. After the injury, a year later, the railroad offered him a position as a security guard at a different pay level with different benefits. And I did inquire with Mr. Wardwell as to what the pay difference was and what was the difference in benefits, including health benefits. But never did I ask Mr. Wardwell a single question about did you submit the bills to insurance for payment. And just because you ask a person what's the difference in their damages, i.e., what's the difference in their wages and what's the difference in the benefits, that doesn't open a door to who paid your bills in this case. So we have a clear violation of the collateral source rule. We have a clear violation of a motion to eliminate. Counsel did not go to the court and say to his honor, and I know most of you have been trial judges in the past and been in my position before, but when you have that issue, you go to the court and say I believe the door has been opened. That wasn't done. So your honor, the second reason, again, those are two points that are in the back of my brief. I don't want to make minor points. I wanted to talk about them first because both of them do require the reversal of this case. But I believe the main reason which took up the entire, a lot of the brief and a lot of time in the trial court was the impermissible sole cause offense and not the LA case. And if you look at our cases, your honor, the Ayers case, A-Y-E-R-S, Supreme Court case in 2003, was right on point. And in Ayers, the Supreme Court said, if you grant me to read it, what they said was it would be particularly curious for Congress to refer expressly to the established principles of comparative negligence, yet say not a word about adopting a new rule limiting the liability of the railroad on the basis of another party's negligence. And it went on to say there's been no FDLA decision by this court that mandates apportionment of damages among potential liable tort offenders. Is a sole proximate cause offense the same as an apportionment of damages? Yes. Because, your honor, apportionment, by its definition, is a comparison of fault among joint tort offenders. And I think really we ought to be careful. Well, it's assigning total fault to a third party. You're saying it's 100% fault. It isn't determining that a third party was the sole proximate cause the same thing as saying the defendant was not negligent, had zero negligence? No, your honor. And I think we have to be careful between sole cause and sole proximate cause. And I know the term proximate is in there, but in an FDLA case, it really is a difference. And here's the difference. When you say sole proximate cause, you're assuming that somebody else was also negligent, but the negligence of the other person was the proximate cause. And that's not permissible in an FDLA case, so I would go back to sole cause is really the term we should be considering. Now, sole cause, if you want to go to the record and say there was no evidence that the railroad did anything wrong, but when you talk about sole cause, you're talking about assigning 100% fault. And that's the whole idea of apportionment, is you're looking at the potential. It's the potential tort feasors, but you're saying it's 100%. So there's a difference between saying there's an absolute absence of negligence, which we have negligence in this case. The record's clear that the van driver said, the professional van driver who's been trained, said she did not look in her rearview mirror as required. She did not look over her shoulder to check the blind spot before she changed lanes as required. She admitted while she disagreed she was only in the right lane for one to two seconds. She did admit that if my expert was correct that she was only there for less than four seconds, she pulled directly in front of the other van. So there was evidence of negligence. So when you compare or you apportion, and I'm not talking apportion damages. I'm talking about apportioning fault. When you apportion fault, you're comparing potential joint tort feasors. And if you are comparing the van driver to the other person, in this case Ms. Banker, and you're saying what the railroad was saying was we want an affirmative defense. We want to be able to argue that person's fault was 100%. So I think there's a huge difference when you say lack of evidence as to who it was versus apportionment of that issue. Okay, what if a tornado came through and caused an accident and you were in the same position and they were saying it was the tornado, it was 100% an act of God or whatever? Would you be able to, would that be a defense? An act of God defense? I don't know if an act of God defense is a defense to FELA, Your Honor. I mean, I think the FELA is very clear in the cases what they say. I mean, I've never researched an act of God. I guess I would have to look and see because that really is a special defense. I'm just throwing a random question at you. I mean, if it was an act of God question, I would probably be a little more comfortable with saying no. But I don't know on an act of God because I know that sometimes is a defense in some cases. So that's a unique defense. But I think when you look at an affirmative defense, the defendant has the burden to go forward. And it's not just a lack of evidence, which is if you look at that Supreme Court case they cite, isn't it? What the Supreme Court said there was there was a complete lack of evidence of negligence on the part of the railroad. And I think that's what they were saying there. So the sole cause was the other part. But when you do raise the affirmative defense of sole cause, which is what they did in this case, you're now saying it's 100% and you apportion 100%. Under the instructions given to the jury, the jury in this case found that the defendant had 0% liability, right? Yes. And they were specifically instructed that it didn't have to be the sole cause, a cause acting with other causes. They should still find the railroad liable. And they did not do that. So you had an opportunity to argue. I mean, you're arguing that there was clear evidence of negligence. And you argued that to the jury. I did. And they said, no, we find no negligence. Because, well, first of all, IPI 12.04, the instruction, is a convocation of Illinois common law sole cause defense. I mean, that's what it is. It's actually a convocation of Illinois sole proximate cause defense. It's not really sole cause defense. It's sole proximate, which is what we were talking about earlier, when there really is a difference between proximate and sole cause. So we objected to giving a bad instruction. But the point is that, yes, they did. I did argue that the railroad was at fault. But the point, as in the Palmer case that I cite to the court, is that the railroad is not permitted to point to a third party. They can point to the contributor plaintiff, if there was any, under FILA. But they cannot point to the fault of a third party. That's what Ayers and the whole line of cases afterwards say. And let me just ask you. Ayers talks about comparative fault and limiting liability through comparative fault. Are there any cases that say that there is no sole proximate cause defense in a FILA case? Yes. Palmer. I mean, Palmer is right on point. Because Palmer says – I mean, Palmer is a FILA case. I understand it's for Missouri. Or Missouri, depending upon your point. But in Palmer, there was evidence in what they issue at trial, Union Pacific, the same defendant, raised the negligence conduct of the third party is the sole cause. And that is a term we should be using, sole cause, not sole proximate cause. And there was no finding before the arguments that the railroad was partially at fault. A lot of times in their brief, they argue that, oh, you have to find for the railroad that they were at fault first before that rule kicks in, that there's no apportionment. That may be true for damages, but it's not true for fault. And what they said in that case was Union Pacific did not have the right to discuss Wharton, who was the other driver, his negligence. And they did not have the right to argue that Wharton's negligence was the sole cause. So – and I'm not sure if I answered the earlier question, Your Honor. I want to make sure I answered it for you. Was that – when you asked me was I allowed to argue the railroad's negligence, yes, I was. But the issue before the court is whether you can argue the negligence of a third party as a defense. And what Palmer says and what Ward says and the cases we cite says you cannot argue the negligence of a third party. Now, the railroad's cases, interestingly enough, none of them say that. There's not a single case that gives the railroad permission to argue sole and proximate cause or sole cause. If you look at their cases, a couple of them rely upon Illinois common law defense, including the Smith case, which they asked to be granted additional leave to cite to this court. And I know it was an FULA case, but if you look at that case and read it, and I listened to the oral argument, because you can do that, so I listened last week as I was getting ready to their oral argument. It's interesting, there's not a single time they make reference to the FULA and the affirmative defenses that are available. It's strictly based on Illinois common law. And they cite all the Illinois Supreme Court cases on asbestos. And the whole oral argument was strictly whether or not the – because they didn't have an expert, they could still make a sole cause argument. So it's not discussed in FULA, and I think that's very important on the Smith case to look at. So just again, and I'm sorry, but I'm asking a lot of questions, but so in a case like this, your position would be that the railroad would be required to get up and argue we were not negligent. Yes. But they could not, in a case where the person operating their vehicle was rear-ended, they couldn't say that's where the blame is. That's exactly correct. Wouldn't that be like a big elephant in the room? Everybody would be sitting there thinking, you know, that's really what you're talking about. It may be. I know Mr. Jones is a good lawyer, and he could probably finesse a way to try to point to that, and I'm not criticizing him. He is a good lawyer, and he would be able to bring that issue up. But there's a difference when you give an affirmative defense and you allow the defendant to sit there and say, this person caused it. This person's at fault. It's 100 percent their fault. That's what an affirmative defense of sole cause, which is what they asked the court to do, versus, hey, we didn't do anything wrong. I'm sorry, but we didn't do anything wrong. We are not negligent. I mean, our driver looked. Our driver signaled. Our driver was there 20 seconds, which is ridiculous, because 20 seconds would have put her past where the car can't progress. So, I mean, she changed her testimony for her deposition for two miles to make it sound a little better. But I think, you know, Your Honor, when you get to that point, yes, it may be difficult, but that, if you look at all the opinions in the Supreme Court when they talk about FELA and its purpose, the idea is they have to put the shoulder of the cause somewhere. We don't have workers' comp in FELA. So it's not an automatic way that people have the right to recover automatically. But because there's a lack of standards in FELA, they decide to cause some of the damage or some of the damages to be borne by the borough. And I know I'm in my last two minutes, so if there's any other questions. The only other question I have, Your Honor, is when they said, or comment I had, when they have the statement that I did not object to the introduction of the evidence of Ms. Behnken's drinking, that was part of my motion to eliminate 6 and 7, and I specifically did, and I cited to the court in my reply brief where I did object to the evidence, and they had a continuing objection to that. So that's just wrong that we didn't do that. But any actions of Ms. Behnken, any actions of her drinking, I mean, we get into the brief and the whole issue of whether under 403 he should have balanced before he put it in, but the argument is— I mean, you've finished your sentence. Go ahead. Thank you, Your Honor. But the bottom line on that, Your Honor, is any evidence of Ms. Behnken should have been precluded because it's based on the negligence of the third party, which is students from this school. Thank you, Your Honor. Thank you, Counsel. Counsel? Good morning, Judge Moore, Goldenhurst, Stewart. The frustration, I'm sure, of this court is the same frustration that Judge Lopino and I had throughout the course of this litigation. Mr. DuPont somehow believes that because you sue a railroad under the FDLA that the railroad has no defense, that the railroad cannot put on a defense whatsoever in an FDLA case. The mere fact that the plaintiff claims that he was injured by negligence of the railroad, the railroad can't put on any evidence that it was something else that caused the accident. And, of course, this accident, Judge Lopino bent over backwards to allow Mr. DuPont to put forth his case. In this case, it doesn't take a rocket science, a 16-year-old individual, and we had 12 intelligent jurors that decided this case, and, of course, that's what both parties requested in this case. They requested a trial by jury, and the jury was properly instructed, and this is the instruction. It's instruction number, defense instruction number 3, which is the IPI 12.04. You're all aware of it. It's been around for years, but there is a modification to that instruction. That modification was, under the standard instruction, it talks about sole proximate cause. This was modified that says if you, more than one person can be blamed for causing an injury. If you decide the defendant was negligent and its negligence was a cause of the injury in whole or in part, that's the FDLA language, in whole and in part. So it was modified to comport with the FDLA, in whole or in part, to the plaintiff. It is not a defense that some third person is not a party to the suit may also have been to blame. The jury was told that. However, if you decide that the sole cause of the injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant. That not only complies with longstanding Illinois law. It not only complies with longstanding FDLA law. It complies with common sense. This whole argument that Mr. DuPont cites to the Ayers case and other cases that talk about apportionment, there is never any attempt to apportion any damages. The defendant never asked for an apportionment of damages. As a matter of fact, you'll see in one of the rejected instructions that the plaintiff is complaining about is a non-IPI instruction that he wanted to tender to the jury on apportionment. This is not an apportionment case. This is the uncontradicted fact. We know. We know that this physical facts show that the automobile operated by Ms. Bacon hit the van that Mr. Wardlow was riding in, squared in the back of that vehicle. While she was properly in her lane of traffic, the van was in her lane of traffic. Consistent with what every one of the individuals who were in that van gave statements to, that she was not exceeding the speed limit. She turned on her turn signal. She made proper turn over, and it was a normal, proper turn, according to the plaintiff's own expert, Bruno Schmidt. And then at some point, and which is, again, undisputed, established by their own expert, Ms. Bacon, the driver of the automobile, collided with that vehicle, collided with the back of a moving van, 50 miles an hour. It's going 50 miles an hour in its proper lane of traffic, and it gets hit in the rear at a speed by Mr. Schmidt's evaluation. At a minimum of 10 to 15 miles per hour faster. So anywhere from 60 to 65 miles an hour, which he admits is well in excess of the speed limit. And Mr. DuPont somehow thinks that he can come into court and hire Bruno Schmidt, and if you haven't looked at it, you ought to look at his direct examination of Mr. Schmidt. He spent probably 20 minutes qualifying Bruno Schmidt as an accident reconstruction expert. He asked about all of his qualifications and training to be an accident reconstruction, and the organizations he's involved in, and what does he do? He comes in and says, I'm contradicted, it's in the record. I asked Mr. Schmidt, did you do a complete accident reconstruction in this case? No. Did you examine any of the physical facts of the case? No. What did you rely upon to formulate these opinions that you're giving in this case? He says, I relied upon the statements of the witnesses and the police report. It's a good point to ask you a question that Mr. DuPont argued. Did he express an opinion about whether or not the railroad's driver was negligent? He didn't specifically express that opinion. But what he did do, he formulated this opinion that the driver of the vehicle, the van, improperly made a move into the outside lane directly in front of Ms. Banton's vehicle. Was that an opinion he gave? Yeah, that was an opinion he gave. I mean, he went beyond just saying it was this many seconds and so forth, and he said, in my opinion, she improperly switched lanes. And as a matter of fact, you'll see extensive cross-examination on that, because he admitted that. My question is, on direct examination, is that an opinion that Mr. Schmidt gave? He did. That she improperly switched lanes. Well, that she made them move from one lane to the other in front of the other vehicle, and it was less than so many seconds. So he puts that into evidence. And so he says, well, we can't cross-examine him on those statements. And, of course, every one of those people that were in that van were the statements that he reviewed and he was relying upon. None of them indicated that she pulled in front of this vehicle improperly. And the cross-examination was on what the individuals within the van testified as to what happened. Well, the question you asked, though, was, paraphrasing, but pretty close. Didn't all the witnesses say that the sole cause of the wreck was the driver? I think, actually, what I asked is, wasn't all the occupants of the van testify that the van driver, excuse me, the drunk driver was the cause of the accident? I understand the phraseology of your question called for whether they rendered an opinion instead of calling for what they said as facts in the statements. Judge, it is what they said in their statements. And so we're allowed to ask those questions to impeach a witness who comes into court and says that this accident happened as a result of her moving a lane over into the path of another vehicle. And see, this is another thing, Judge, which the plaintiff's whole theory in this case of negligence against the driver. Isn't that Ms. Behnken, who's the drunk driver, was following them off of Interstate 255 onto Route 3 and following them and taking the same path as they did, which I believe the evidence clearly establishes. Their theory is, and the only way they can even get to this point of making this argument that the vehicle pulled into the path of Ms. Behnken is they have to place her going across the river, coming back onto Interstate 255, or illegally making a cross of the median and turning around and coming back on that exit. As you can see from the photographs, this is the plaintiff's theory that the way they pulled in front of her is not because she's following them down the road. They're saying, well, she's coming off of Interstate 255 coming from the St. Louis traveling eastbound, where the two lanes merge, and that they, the van driver, pulls in front of her. And in this case, there's not even evidence at which Mr. Schmidt admitted on cross-examination. There's no evidence that that even occurred. And she didn't really know how she got there. No, exactly. And if you read her testimony, she was quite candid. She was very honest. She says, look, what I distinctly remember is I worked at this piano bar in the city of St. Louis. I worked there that night. I left the bar after we got off work about midnight. She went to Big Daddy's on the landing, did some drinking until 2 o'clock in the morning at the point that Big Daddy's closed down. Then she went to Pop's. She lives in Swansea, Illinois, and she says the route I would normally take, and she says I specifically recall as I came out of Pop's, I made a right-hand turn with the intention of taking the road over to get to 255 to go northbound on 255, catch Illinois 15 to go eastbound to Illinois 159 to go northbound to my home in Swansea. No question she says that after she made that right turn on the Route 3, she doesn't have a clear recollection of what she did. But there is no evidence, not a single witness in that band. There's not, by her testimony, nobody has ever testified that she did what Mr. Schmidt concludes that she did. And nobody supports it. And nobody's testified to the contrary. They never saw her. You're absolutely right. The only thing that which their own expert, Mr. Schmidt, admitted, we showed a Google map, and he says Mr. DuPont actually took him to Mr. Schmidt, took Mr. DuPont, took Mr. Schmidt to Pop's and drove the same route. And he admits that the route that you would get to this location where the accident, if you turned right out of Pop's, takes you exactly to this location. So there's at least some circumstantial evidence based upon her uncontradicted testimony that that would be the way she would go. But I would agree, Judge, all the witnesses are in agreement. They never see this vehicle at any time prior to the collision. So the only thing we have is that bit of circumstantial evidence that she testified unequivocally that she came out of Pop's and she made the right hand turn. And she doesn't remember anything after that. So this is a case that, you know, the plaintiff had their day in court. The plaintiff had made all of his arguments. The jury deliberated on this case under proper instructions. And the jury came back with the verdicts finding that Union Pacific Railroad was not at fault. And not only, I mean, when you think of the record in this case, who could conclude otherwise, quite frankly? I mean, the when everybody in the van said that she didn't make anything but a normal turn, that she had her turn signal on, she was traveling within the speed limit, where is there any evidence of negligence? Mr. Pop wants to rely upon that she admitted that if she did cut this guy off, she would have been violating some rule in a hypothetical question. That's not any admission. The jury heard all that evidence, and the jury concluded she was not negligent. She's a very competent driver. She established what her history was and how she was familiar with that. So this is classic, classic case where the jury was properly instructed on this theory that there wasn't even evidence to support to establish their case. But Judge Lopenow allowed Mr. DePott to put forth this case. You will see in the record that we, on behalf of Union Pacific, we made motions to bar Mr. Bruno Schmidt from even testifying because his testimony wasn't based upon any accident reconstruction. He didn't really do any accident reconstruction. He comes in and he qualifies him as accident reconstruction and says, okay, well, I'm going to rely upon these statements. And the statements don't say what he held them to say. So we are allowed, as any party is allowed, when somebody puts an expert witness on and they want to use exhibits and documents, we're allowed to cross-examine those witnesses on those statements and documents that they say that they rely upon. Because, obviously, we have the right to impeach the inconsistencies with what they have to say. Mr. DePott says that his other issue is on medical bills. And I find that a little interesting because he says he's now claiming that it was a collateral source. Well, as I'm sure you all are aware, that a collateral source is when somebody else purchases or provides, the plant provides some type of insurance. In an FELA case, under the collective bargaining agreement and any FELA case, not just this one, the Union Pacific Railroad provides that insurance. In fact, the plant will put that into evidence in their claim. And that is not a collateral source. We are entitled to – they're not – in fact, the motion that Mr. DePott, when he objects, he doesn't object to this collateral source. He says in his objection that that violates their – the defendant's motion. The defendant's motion was that you should not be putting into evidence any of the medical bills because it's not a collateral source. And any medical bills that are related in this case are paid by insurance that the Union Pacific Railroad provides. It's not a collateral source. So now, for the first time, he's making this argument that somehow that was improper. That was totally proper examination because – and it pertained to Mr. DePott admits not only does he put into evidence the fact that the Union Pacific Railroad provided him this health insurance, but then he asked Dr. Schrodinger whether or not he had bills that remained to be paid. And the only question I asked is, did you submit this to the insurance company? Now, how can that be improper? The jury's – and, of course, in this case, never even reached that decision. They never even talked about damages. So it's totally irrelevant to the plaintiff's claim in this case. So, first of all, it was proper questioning. Second of all, it clearly was opened the door by the plaintiff. And last of all, as far as the plaintiff's objection here that it's a collateral source, it is not a collateral source. I'm sure you've all read your bench briefs and any other briefs that you need to look at. Unless there's any other questions, I believe this is pretty clear-cut and the law is pretty clear-cut. And we'd ask respectfully that you affirm the jury's decision in this case and deny plaintiff's post-trial relief. I don't think we have any more questions. Thank you, Counsel. Thank you. Counsel. Thank you. Your Honor, since this is the rebuttal and we're focused on what he said, you asked Mr. Jones very specifically if he gave an opinion. If I gave – asked Dr. Schmitt an opinion and he pulled over and directed me in front of the oncoming panel, and that's pure false. I never asked him that. The opinion I asked him, which is on page 211 – and I need to apologize because for some reason the quarter-quarter transcript we have is two or three pages off. So the notation in my reply brief is like two or three pages off from the official record. When I got the official record, I used that, sent it on back here. Mr. Jones used it. But because the reply brief was due so quickly, I think I just used the – what they sent me. But it turns out that it's actually off by three pages. So I think it's actually on page 214, the opinion that I asked him for. And it's on line 8, and it goes to line 12. The opinion question that I asked Dr. Schmitt was, did you reach an opinion based upon a degree of certainty within your field, as to the amount of time the band could have been in the right lane before intact? That's the only question I asked him. And that's what he was there for. He's making this big issue about Dr. Schmitt not being – or being an accident reconstructionist and not doing an accident reconstruction. That wasn't the purpose of putting Dr. Schmitt on. I mean, obviously I have a right to put on an expert for any reason I want to. And the reason I used Dr. Schmitt was because there was this whole dispute as to how much time could she have been in the band. And if she was in the band for only one to two seconds, which is what the evidence showed, and that's why he was put on, that meant she violated Illinois state law, she violated her company rules, and she changed lanes directly in front of an oncoming vehicle. So when you ask counsel if I asked Dr. Schmitt any opinion at all, not a single opinion that I asked him about fault, and that's why if they were going to ask any questions of Dr. Schmitt as to what the other occupants in the band said, it should have been limited to questions pertaining to how long it was in the right lane before impact. This was not a question where I put on Dr. Schmitt for that person. Now, you also asked about Ms. Banking, the drug trafficker, as Mr. Jones referred to over 50 times during trial opening and closing. He said there was no evidence as to where she came in. The record is clear. She told the police officer that she came eastbound on I-255 and meant to go northbound, but somehow she ended up going where she was at. That was the testimony that she admitted to, she told the police officer. She said she couldn't remember too well, but if that's what he said, that's what she said. And Mr. Wardwell also testified that she said the same thing, no objection, never contested it. So there was direct evidence as to where she came, Your Honor. She also said that she remembers being in the right-hand lane. The only thing she remembers being in the right-hand lane is she never changed that lane. Well, you can't get to Route 3 unless you take a left-hand turn and get in the left lane. She never did that, she said. So she clearly was eastbound on I-255 and came across, and she did strike the band in the back. But those two points are just completely wrong when he said that up here. And so the record needs to reflect that. It was an impermissible opinion question. And then the other point, Your Honor, he said was that the railroad should have a defense and that it's longstanding law in Illinois that sole cause is defense, which is codified under 12.4. And that's true. Illinois common law doesn't permit that sole cause defense. But then he went on to say it's long recognized in FBLA. And I asked this court to take a look at their opinions. There's not a single opinion that they cite that says you can go ahead and blame the negligence of a third party as an affirmative defense, a sole cause defense. There's not a single case that they cite that says that. Every one of their cases, it does not say that to them. So the only thing quickly is on the Meekus case that they do refer to, which was an Illinois case, Your Honor, the issues differ in that case because the plaintiff put on the evidence of the third party's negligence. They wanted to put on the fact that the Great Crossing Arms had been knocked down several times. They put on the evidence of the negligence of the third party. So that case doesn't have any application. But I gave it to the court, and Mr. Jones stood up here and just said it's the longstanding law. There's not a single case that they can cite that says it's a permissible defense of sole cause. And the Supreme Court of the United States has said it's impermissible to blame the third party negligence of a non-party. Thank you, Your Honor. Thank you. Thank you, counsel. Excuse me. We appreciate the briefs and arguments of counsel. We'll take this case under advisement. Thank you, Your Honor. Thank you.